**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re:<br>THORCO INC.,<br>Debtor. | Case No. 9:22-bk-90119-WLH<br>**ORDER** |

This order resolves two pending motions: (1) Whitefish Credit Union's motion for an order declaring Dennis Thornton, Nicholas Ramlow, John Sheldon, and James White[1] vexatious litigants and imposing against them a prefiling order and monetary sanctions in the form of attorneys' fees and expenses,[2] and (2) the Defendants' joint motion to hold Thornton, Ramlow, Dennis Murphy, and Jeff Cameron[3] in contempt of court for violation of the automatic stay and the Barton doctrine.[4]

The court concludes that both Thornton's and Ramlow's course of conduct over the span of roughly one year demonstrates a pattern of vexatious and obdurate conduct, including bad faith abuse of the judicial process. The court will not tolerate duplicative, repetitious filings or filings intended to harass both the court and the Defendants. As a result of Thornton and Ramlow's vexatious and bad faith conduct, this court also concludes that monetary sanctions are appropriate to deter and compensate.

---

1 Throughout these proceedings these individuals refer to themselves as "equity investors" or asserted creditors of the corporate debtor. Here, they will be collectively referred to as the "Targets."

2 ECF No. 358. Defendants Neal Bouma, MO Somers LLC, and Ruis Glacier, LLC each joined in the credit union's motion, also seeking reimbursement of their respective attorneys' fees. ECF Nos. 409, 410, and 411. The credit union and the joining parties will be collectively referred to as the "Defendants."

3 These individuals are collectively referred to as the "Contempt Targets."

4 ECF No. 464. Mr. Murphy agreed to a settlement with the Defendants regarding the request to hold him in contempt and sanction him. *See* ECF No. 490. Although the settlement has not been filed on the docket, the court assumes it has been finalized and therefore does not address Mr. Murphy in the remainder of this order.

## BACKGROUND

Since approximately 2018, Thornton (individually or via his corporation, Thorco, Inc. (the debtor)) has litigated against the credit union and others over real property in which he continues to assert some sort of interest. The Montana Supreme Court has twice determined that Thornton's claims to the property are contrary to the outcome of a 2016 mortgage foreclosure settlement pursuant to which the credit union lawfully took title to the property.[5]

Much of this bankruptcy case[6] has specifically centered on the debtor's adversary proceeding claims, which were narrowed to a Bankruptcy Code section 544(b) claim.[7] The thrust of the section 544(b) claim was that the transfer of two parcels of real property from the debtor to the credit union in October 2018 (which occurred pursuant to the parties' 2016 settlement agreement) could be avoided as a constructive fraudulent transfer under applicable nonbankruptcy law. Thus, the real property or its value could be recovered by the estate under Bankruptcy Code section 550(a), including as against the credit union's subsequent transferees (defendants Bouma, MO Somers LLC, and Ruis Glacier, LLC).

In November 2023, the court granted a motion to convert the bankruptcy case to one under chapter 7 and the case trustee was substituted as plaintiff on the estate's behalf. Subsequently, the case trustee and the Defendants asked the court to approve a joint settlement of the bankruptcy estate's claims.[8]

The Targets (jointly or individually, and in various capacities) filed at least nine objections or other papers opposing the settlement.[9] While the Targets aggressively opposed the proposed settlement, their objections did not focus on the section 544(b) claim. Instead, the opposition papers and requests for relief raised two broad categories of issues. First, the Targets presented various theories that the 2016 settlement agreement or the October 2018 deeds recorded pursuant

---

[5] *See* ECF No. 363-20 (*Thornton v. Whitefish Credit Union*, 2019 MT 138N, 455 P.3d 435 (Mont. 2019)); ECF No. 363-21 (*Thorco, Inc. v. Whitefish Credit Union*, 2021 MT 207N, 405 Mont. 537, 492 P.3d 1228 (Mont. 2021) (affirming Montana state district court's application of claim and issue preclusion to Thorco's claims and affirming ruling that Thorco was a vexatious litigant)).

[6] This is the debtor's third bankruptcy case. *See In re Thorco, Inc.*, No. 2:14-bk-60633-RBK & *In re Thorco, Inc.*, No. 2:17-bk-61219-BPH.

[7] *See Brandon v. MO Somers, LLC et al.*, Adv. Proc. No. 9:22-ap-09003-WLH at ECF No. 32.

[8] ECF No. 295.

[9] *See* ECF Nos. 306, 307, 308, 309, 321, 328, 331, 332, and 339.

thereto were somehow invalid and did not actually transfer the property to the credit union. Second, the Targets argued that a Satisfaction of Mortgage recorded by the title company on behalf of the credit union in May 2022 somehow quitclaimed the property back to the debtor free and clear of any debt. The Targets presented this argument despite both an earlier-in-time transfer from the credit union to the downstream buyers of the property (leaving the credit union with no interest in the property to reconvey to Thorco in May 2022) and a subsequent Corrected Release of Mortgage that the credit union recorded in June 2022. These theories were (i) contrary to the central premise of the debtor's live claims, (ii) related to claims in the debtor's first adversary proceeding complaint that were dismissed based on principles of claim and issue preclusion, and (iii) contrary to the Montana Supreme Court's prior decisions.[10] Nevertheless, the Targets persisted in their efforts to litigate these theories in the context of the settlement motion in an increasingly vexatious and harassing manner.

Thornton, purportedly on the debtor's behalf, also sought document production from the credit union, the title company, and the case trustee, much of which had no apparent relevance to the section 544(b) claim or the settlement motion.[11] Certain of the Defendants opposed these requests and the court ruled on the discovery matters at an initial hearing on the settlement motion.[12] At this hearing, the court stressed that it was not in any way inclined, nor does it have the ability, to revisit issues already litigated and finally decided in Montana state court because "[t]hat door is closed and nailed shut."[13]

---

[10] The 2016 settlement agreement and subsequent transfers of the property were fully and finally litigated in Montana state court, culminating in the two final, unappealable Montana Supreme Court decisions. *See supra note* 5. Notably, the Montana Supreme Court also affirmed the state district court's finding that Thorco, Inc. and the Thorntons were vexatious litigants and the resulting prefiling and prerecording order, entered in part because of their "relitigation of the same issues" even though "all the issues between the parties have been litigated and resolved." ECF No. 363-18 at p. 13 of 14 (vexatious litigant order entered in *Thorco, Inc. v. Whitefish Credit Union*, Cause No. DV-13-534 B).

[11] *See* ECF Nos. 315, 316, & 317. In support of his discovery request, Thornton made the very serious, but facially dubious, claim that debtor's former counsel "had been the subject of remote electronic surveillance by the U.S. Trustee's Office." *See* ECF No. 327 at p. 15 of 35. To date, there is nothing in the record to support this theory or explain how it was relevant to the section 544(b) claim.

[12] *See* ECF No. 344 (Administrative Matters Order).

[13] *See* ECF No. 459 at pp. 10–12 of 86 (Aug. 14, 2024 hearing transcript).

On September 6, 2024, the credit union filed its request for a prefiling order against the Targets.[14] Thornton and Ramlow requested an extension of time to oppose the motion, including in their filing the following "Statement of the Case":

> [T]he rabbit-punch and groin shot…that is one of the oldest and most effective tricks in [court]. Every hack in the business has used it in times of trouble, and it has even been elevated to the level of [judicial] mythology in a story about one of [WCU's] early [asset plundering schemes] in [Montana]. The [battle] was close and [WCU] was getting worried. Finally [WCU] told [its co-conspirators] to start a massive rumor campaign about his opponent's life-long habit of enjoying carnal knowledge of his own barnyard sows.
>
> "Christ, we can't get way with calling him a [vexatious litigant]," the [co-conspirators] protested. "Nobody's going to believe a thing like that."
>
> "I know," [WCU] replied. "But let's make the sonofabitch deny it."[15]

Ramlow later claimed full responsibility for including this quote in the filing.[16]

On September 24, Thornton filed a motion for contempt and discovery sanctions against both the credit union and its counsel, seeking an order "subjecting [the credit union's counsel] to imprisonment or fine or both until such time as she complies with Administrative Matters Order."[17]

---

[14] This was the Defendants' second motion to declare Thornton a vexatious litigant. *See* Adv. Proc. No. 9:22-ap-09003-WLH at ECF Nos. 131, 163 (order) & 166 (audio of oral ruling denying the motion but stating that Thornton's filings up to that point were "dangerously close" to demonstrating a pattern of activity intended to harass the parties or the court and that "denial [was] expressly without prejudice to the court revisiting this issue in the future").

[15] ECF No. 376 at p. 2 of 5 (alterations and quotation marks in original).

[16] ECF No. 460 at pp. 95–96 of 132 (Oct. 28, 2024 hearing transcript).

[17] ECF No. 378. Thornton argued that the credit union failed to comply with the court's Administrative Matters Order as it related to the credit union's method of document production because the credit union sent the document production to Thornton via a secured link rather than via paper mail. But the attachments to Thornton's motion reflect that the credit union sent Thornton the documents via an electronic secure file exchange service (which Thornton apparently did not want to use for some unclear reason) and also mailed the documents to Thornton per his request. The court denied Thornton's contempt motion,

On September 27, the court held a full-day evidentiary hearing and, after considering post-hearing oral argument on October 28, granted the settlement motion.[18]

Despite the court's prior warnings against duplicative and abusive filings—and in flagrant disregard for the Montana state district court's February 2020 prefiling order—Thornton, Ramlow, Murphy, and Cameron (purporting to act as the "Estate of Thorco, Inc.") filed a new state court lawsuit against the case trustee, the Defendants, and others for declaratory and injunctive relief.[19] They then adopted the state court complaint in this case, relying upon it as a basis to object to the case trustee's counsel's fee application.[20] The state court dismissed the lawsuit *sua sponte* on December 11, 2024, as violative of the February 2020 prefiling order.[21]

## GOVERNING LAW & ANALYSIS

### *Vexatious Litigant Designation, Prefiling Order, and Sanctions*

This court possesses "statutory and inherent powers to limit the relief available to debtors who act in bad faith [or] abuse the bankruptcy system,"[22] including "the power to sanction vexatious conduct presented before the court" to "prevent an abuse of process."[23] The court's inherent power is "governed not by

---

including because there was no violation of the production deadlines set by the court, let alone any basis to imprison anyone. ECF No. 391.

[18] ECF Nos. 390, 392, & 415.

[19] ECF Nos. 464 & 464-1.

[20] ECF No. 469.

[21] ECF Nos. 491 & 491-2.

[22] *In re Stokes*, No. 21-90126-WLH, 2021 Bankr. LEXIS 2832, at *3 (Bankr. D. Mont. Oct. 1, 2021) (citations omitted).

[23] *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996) (citing 11 U.S.C. § 105(a)). *See also, e.g.*, *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196–97 (9th Cir. 2003) (noting courts' inherent authority to sanction "bad faith" or "willful" litigation misconduct and citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 42–47 (1991)).

rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[24]

Defendants ask the court for a prefiling order preventing the Targets from filing any further motions either in the bankruptcy case or in the adversary proceeding without first seeking this court's permission to file the document. Before imposing any prefiling restriction, the court must (1) give the litigant notice and a chance to be heard before entering the order; (2) compile an adequate record for appellate review; (3) make substantive findings about the frivolous or harassing nature of the litigant's conduct; and (4) narrowly tailor the order to closely fit the specific vice encountered.[25] The third requirement specifically "gets to the heart of the vexatious litigant analysis" and considers whether the litigants' actions were "frivolous or harassing" in nature.[26]

---

[24] *Chambers*, 501 U.S. at 43 (describing an inherent power to sanction bad faith conduct where conduct falls outside the scope of 28 U.S.C. § 1927 or Rule 11). Defendants rely primarily on 28 U.S.C. § 1927 as authority for imposing sanctions, which permits "any *court of the United States*" to assess sanctions composed of "excess costs, expenses, and attorneys' fees" against any attorney or pro se litigant "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (emphasis added). In the Ninth Circuit, however, bankruptcy courts are not considered "court[s] of the United States." *Perroton v. Gray (In re Perroton)*, 958 F.2d 889, 896 (9th Cir. 1992) (holding that bankruptcy court lacked authority to waive appellate fees under 28 U.S.C. § 1915 because bankruptcy courts—as Article I courts—do not meet title 28's statutory definition of a "court of the United States" since the definitional language refers only to Article III courts). At least one bankruptcy court has applied this principle to preclude itself from imposing a section 1927 sanctions award. *See Szanto v. Szanto (In re Szanto)*, 2020 Bankr. LEXIS 646, at *10–11 (Bankr. D. Or. Mar. 10, 2020) *aff'd*, No. 22-35849 (9th Cir. Aug. 29, 2024) ("Although there is not nationwide agreement on the issue, in the Ninth Circuit, bankruptcy courts are not authorized to impose sanctions under section 1927" because "the statutory definition of 'court of the United States' set out in 28 U.S.C. § 451, which applies to United States Code title 28, refers to federal courts, 'the judges of which are entitled to hold office during good behavior.'" (citing *Perroton*, 958 F.2d at 895–96)). *See also Determan v. Sandoval (In re Sandoval)*, 186 B.R. 490, 495–96 (B.A.P. 9th Cir. 1995) (explaining how the definition of "court of the United States" in section 451 applies equally to use of the same phrase in 28 U.S.C. § 1927); *McCann v. Wichot (In re Patmont Motor Werks, Inc.)*, 2018 Bankr. LEXIS 3102, at *22 n.8 (B.A.P. 9th Cir. Oct. 4, 2018) (same point). This court concludes, absent any controlling contrary authority, that it lacks the authority to award section 1927 sanctions.

[25] *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (citing *De Long v. Hennessey*, 912 F.2d 1144, 1147–48 (9th Cir. 1990)). The first two of these requirements are procedural and the latter two are substantive. *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014) (citing *Molski*, 500 F.3d at 1058).

[26] *Molski*, 500 F.3d at 1059 (cleaned up).

The court finds and concludes that both Thornton and Ramlow have engaged in conduct that is both frivolous and evidences an intent to harass the Defendants and the court; therefore, the court designates them as vexatious litigants. The number and content of the documents either filed or adopted by Thornton and Ramlow that contain duplicative and fanciful theories are indictive of the frivolousness of their meritless claims.[27] Because these claims have repeatedly failed in other courts, neither Thornton nor Ramlow could have any "objective good faith expectation of prevailing" on those same theories in this court.[28] The Targets have been repeatedly warned that this court would not—and indeed cannot—sit in an appellate capacity or otherwise revisit issues that were or could have been litigated in state court and that have been finally decided by the Montana Supreme Court. But Thornton and Ramlow persisted, continuing to file or adopt documents regurgitating the same issues.[29] Moreover, Thornton and

---

[27] *Id*. at 1059 (court must look at both number and content of filings as indicia of frivolousness).

[28] It is "not reversible error" to also consider additional factors, such as "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing[ ]; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Id.* (citing *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

[29] *See, e.g.*, ECF No. 306 at p. 6 of 31 (Thornton's objection to the settlement motion asserting "WCU admits that it purloined the [2016 settlement] documents," and citing the Montana statute governing the penalty for "unlawful hypothecation"); ECF No. 308 (Ramlow's joinder to Thornton's settlement motion objection); ECF No. 408 at pp. 1, 5, 7 of 13 (Thornton, Ramlow, and others' joint post-hearing brief (i) seeking an order "commanding [Bankruptcy Judge Benjamin Hursh] to identify the intent of the deeds attached to the 2016 Settlement," (ii) asserting displeasure with the court's alleged "propensity . . . to ignore the significance of trust indenture services and escrow as gatekeepers to banking transactions on mortgage securities instruments within the statutory framework of the Montana Mortgage Act," and (iii) arguing that in the "real world, a company that has obtained a $20M bonding line of credit should have no problem performing the terms of the 2016 Settlement" but that it did not happen here because of cryptic "[m]arket manipulation"); ECF No. 464-1 (December 2024 state court complaint signed by Thornton and Ramlow and commenced against the Defendants and the case trustee seeking, *inter alia*, an "injunction barring Defendants" and the case trustee "from further disposition" of the property, a "declaratory judgment setting aside or otherwise vacating all Montana state court orders," and $500,000,000 in monetary damages); ECF No. 469 (Thornton and Ramlow's adoption of the December 2024 complaint in this case).

Ramlow's filings demonstrate an aggressive pattern of an intent to harass both the Defendants and the court given their inflammatory requests for relief and crass, inappropriate, and foul content (which improper content also had little, if any, bearing on the substance of the matters addressed by their papers).[30] This relentless pursuit of myriad deadends has imposed unwarranted burdens on both the Defendants and this court.

While Thornton and Ramlow have each earned themselves a vexatious litigant designation, the court does not find a prefiling order is appropriate at this time.[31] Prefiling restrictions are an extreme remedy that should rarely be used given a litigant's general right to access federal courts.[32] And this court is not convinced that a prefiling restriction is the only or best way to curtail Thornton and Ramlow's abusive behavior. Rather than restricting Thornton and Ramlow's access to the court, the court concludes that another remedy—monetary sanctions—is adequate to deter and compensate for the improper conduct that has occurred thus far.

---

30 *See, e.g.*, ECF No. 327 at p. 15 of 35 (Thornton's response to the credit union's motion to quash, asserting the U.S. Trustee's office was remotely surveilling former debtor's counsel and that counsel "has been the subject of good fortune sufficient to support his retirement" since withdrawing from the case); ECF No. 339 at p. 2 of 8 (Thornton and Ramlow's joint motion to approve credit bid asking the court retain and appoint Ramlow as "representative of Debtor's estate at a rate of $75/hour" and provide Ramlow with "3% of the total recovery" of "purchased claims"); ECF No. 376 at p. 2 of 5 (Thornton and Ramlow's joint motion for extension of time, inexplicably quoting from a book referencing "carnal knowledge" of "barnyard sows" and using other foul and disrespectful language); ECF No. 378 at p. 1 of 78 (Thornton's contempt motion seeking to imprison credit union counsel without articulating any possible basis for such relief); ECF No. 464-1 (December 2024 state court complaint seeking $500,000,000 in monetary damages from the case trustee); ECF No. 483 p. 8 of 9 (accusing the court of exercising "willful blindness" in approving the settlement).

31 Because the court is not entering a prefiling order, it will not address in detail the procedural prerequisites for entering such an order. But they have been met. First, Thornton and Ramlow had ample notice between the Defendants' request for a prefiling order and the hearings on the matter. Defendants' motion was filed and served on September 6, 2024. ECF No. 358. The court held two hearings where it heard argument from the parties regarding the vexatious litigant motion—i.e., on October 28, 2024, and January 27, 2025. *See* ECF Nos. 414 & 496. Ramlow and Thornton filed at least two opposition papers and presented argument at both hearings. ECF Nos. 412 & 416. *See also* ECF No. 460 (transcript of October 28 hearing). While Thornton and Ramlow requested a trial, there are no factual disputes that, if resolved after an evidentiary hearing, would alter any of the court's analysis or conclusions. Second, and finally, this order makes an adequate record for review. *See supra* notes 29 & 30 and pp. 2–5.

32 *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990).

"When a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, sanctions under the court's inherent powers may take the form of attorney's fees."[33] Sanctionable bad faith includes a broad range of willful improper conduct, including where a litigant "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."[34] Even if a litigant's claims are "colorable" and not "totally frivolous," conduct demonstrating that "a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*" is evidence of bad faith."[35]

The court finds and concludes that both Thornton and Ramlow acted in bad faith when they (together or individually, as applicable) filed (i) the Joint Rule 6 Motion to Extend Time at ECF No. 376, (ii) the Motion for Contempt and Discovery Sanctions against the credit union and its counsel at ECF No. 378, and (iii) the December 2024 state court complaint against the Defendants referenced in ECF No. 469. Even assuming these filings contained meritorious claims, they demonstrate a vindictive intent to harass the Defendants and highlight Thornton and Ramlow's refusal to acknowledge the finality of the Montana Supreme Court decisions and heed this court's warnings against relitigation of the same issues. Following a detailed review of the specific attorney time entries submitted to the court, the court therefore imposes monetary sanctions as follows:

- Against Ramlow in the amount of **$178.50**, consisting of the credit union's undisputed attorney fees for work performed related to the Rule 6 Motion to Extend Time.[36]

- Against Thornton in the amount of **$2,677.50**, consisting of the credit union's undisputed attorney fees for work performed related to the motion for contempt against the credit union and its counsel.[37]

---

[33] *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (cleaned up) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)).

[34] *Id.* at 649; *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

[35] *Fink*, 239 F.3d at 992 (quoting *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986)).

[36] *See* ECF No. 407-1. No objections were filed as to the reasonableness of the credit union's fees. Though the motion to extend time was jointly filed with Thornton, the court imposes the full amount of attorneys' fees related to this motion on Ramlow as he asserted authorship credit for the motion's offensive content.

[37] *See id.*

Sanctions for the December 2024 state court action would also be appropriate as the brazen commencement of the action and adoption of it in these proceedings represented the tipping point that left the court with no doubt that Thornton and Ramlow have journeyed deep into vindictive and vexatious litigant territory. Yet the record presented to the court does not support a fee award in favor of any of the Defendants for work performed specifically related to the state court action.[38]

***Contempt for Violation of the Automatic Stay and the Barton Doctrine***

The court declines to hold the Contempt Targets in contempt for violating the automatic stay or the Barton doctrine and thus does not award Defendants any sanctions related to the same.

Automatic stay violations indeed may be punishable under 11 U.S.C. § 362(k), if applicable, or via contempt under 11 U.S.C. § 105(a). However, the Defendants have not established that they either have standing to prosecute a stay violation or that they have suffered, or could recover, actual damages because of the violation. "Section 362 is intended solely to benefit the debtor estate" and "if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay."[39] The

---

[38] The credit union's counsel filed a declaration asserting that the credit union incurred "$24,327.00 in fees for work performed on this matter, including work concerning the Joint Motion for Contempt, the Thorco State Court Action and the appeal of Judge Holt's order approving the settlement." ECF No. 488-1. But the fees are not itemized and there is nothing in the record to separate work related to the state court action from other work performed since October 18, 2024. The court would have awarded appropriate attorneys' fees had the Defendants made an adequate record. *See generally, e.g.*, *Kayo v. Mertz*, 531 F. Supp. 3d 774, 798–99 (S.D.N.Y. 2021) (explaining how a court "is limited to ruling based on the record presented by the parties"). The court expressly declines to reach—and expresses no views regarding—the Defendants' request for the impositions of sanctions related to the pending appeal of this court's order approving the settlement. The Defendants have filed a motion for sanctions for filing a frivolous appeal before the District Court. *See Thornton v. Brandon (In re Thorco Inc.)*, Case No. 9:24-cv-00160-DWM, ECF No. 41 (D. Mont. Feb. 28, 2025). The District Court sitting in its appellate capacity is the proper court to consider and rule on this requested relief, *see* Fed. R. Bankr. Pro. 8020, and this court accordingly defers to the District Court as to all matters regarding the propriety of the appeal or any related court filings, as well as regarding whether any sanctions should be imposed against anyone and, if so, the specific sanctions.

[39] *Tilley v. Vucurevich (In re Pecan Groves of Ariz.)*, 951 F.2d 242, 245 (9th Cir. 1991) (citations omitted). *See also, e.g.*, *Chugach Timber Corp. v. N. Stevedoring & Handling*

case trustee here did not join the Defendants' contempt motion. During the final hearing, the case trustee explained that she did not perceive any injury to the estate resulting from the state court action because the state court promptly dismissed the complaint.[40] Even assuming standing were not an impediment to prosecuting the stay violation, the Defendants (except for Neil Bouma) are not "individuals" who may recover actual damages under section 362(k).[41]

Similarly, Defendants have not provided this court with any authority to support the proposition that they have standing, or are protected by, the Barton doctrine. The Barton doctrine provides that an estate administrator, like a case trustee, cannot be sued in another forum for acts done in their official capacity without leave of the court that appointed the officer.[42] In the bankruptcy context, this "gatekeeping function" exists both to prevent "usurpation of the powers and duties" belonging exclusively to the appointing bankruptcy court and to protect certain court-appointed officers against "unjustified personal liability for acts taken within the scope of [their] official duties."[43] The Barton doctrine thus traditionally protects receivers and bankruptcy trustees (and their professionals) and is not generally available to parties beyond those directly representing or connected to the interests of the bankruptcy estate.[44] Here the only party clearly protected by

---

*Corp. (In re Chugach Forest Prods.)*, 23 F.3d 241, 246 (9th Cir. 1994) (citation omitted) (explaining how the automatic stay does not protect non-debtor parties or their property).

40 *See* ECF No. 495 (audio file of January 27 hearing).

41 *See Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 619 (9th Cir. 1993) ("'individual' means individual, and not a corporation or other artificial entity"; broader definition of "persons" under section 101(41) does not apply to section 362(h) (section 362(k)'s predecessor)). Even the case trustee, who stands in the shoes of the corporate debtor, would be unable to recover damages under the statute. *See In re Dyer*, 322 F.3d at 1189 (trustee ineligible to receive damages because not an "individual"). Although Defendant Neil Bouma is an individual, the record does not show what actual damages, if any, Bouma suffered as a direct result of the stay violation.

42 *Barton v. Barbour*, 104 U.S. (14 Otto) 126 (1881) (party protected was court-appointed receiver); *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970–71 (9th Cir. 2005) (interpreting *Barton* to apply to bankruptcy trustee, explaining "[t]he requirement of uniform application of bankruptcy law dictates that all legal proceedings" affecting "administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court").

43 *Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt. (In re Highland Capital Mgmt., L.P.)*, No. 23-10534, slip op. at *11 (5th Cir. Mar. 18, 2025).

44 *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1094 (9th Cir. 2016) (applying *Barton* to unsecured creditors' committee member). *See also In re Crown Vantage, Inc.*, 421

the Barton doctrine, the case trustee, elected not to join or file any contempt motion. Absent any authority supporting extension of the Barton Doctrine's protections to the Defendants, the court declines to award any sanctions for violation thereof.

## CONCLUSION

For all the reasons detailed above, the court:

- declares Dennis Thornton and Nicholas Ramlow to be vexatious litigants;
- orders Dennis Thornton to pay Whitefish Credit Union monetary sanctions in the amount of $2,677.50;
- orders Nicholas Ramlow to pay Whitefish Credit Union monetary sanctions in the amount of $178.50;
- declines to impose sanctions or any other relief at this time against John Sheldon, James White, and Jeff Cameron;
- cautions all parties that further duplicative, repetitive, frivolous, harassing, abusive, or otherwise inappropriate filings, statements, or other conduct will not be tolerated by this court; and
- reserves the ability to impose any additional or other monetary or non-monetary sanctions against any person or entity as may be warranted in the future.

DATED: March 27, 2025.

WHITMAN L. HOLT
U.S. BANKRUPTCY JUDGE

F.3d at 971 (applying *Barton* to liquidating trustee); *In re Highland Capital Mgmt., L.P.*, slip op. at *11–12 n.6 (citing cases extending *Barton* to protect variety of court-appointed and approved fiduciaries and agents, but also underscoring the limited reach of the doctrine).